BILL & CALDWELL, INC. v. UNITED STATES

**No. 5880.**—Invoice dated Alessandria, Italy, September 9, 1939.
Certified September 12, 1939.
Entered at New York, N. Y., September 26, 1939.
Entry No. 733444.

(Decided June 14, 1943)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

WALKER, Judge: This is an appeal to reappraisement from findings by the United States appraiser at the port of New York on certain men's fur felt hats exported from Italy on September 15, 1939. According to the opening statements of counsel, the merchandise was appraised on the basis of cost of production under the provisions of section 402 (f) of the Tariff Act of 1930. The plaintiff contends that the proper basis of value for the merchandise is the foreign value, as defined in section 402 (c) of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938.

It appears that so far as the foreign market for home consumption was concerned, there were at the time of exportation of the hats here involved two classes of purchasers in Italy for hats such as those here involved—(1) retailers, and (2) wholesalers. In connection with the former, the affidavit of Valentino Bonicelli, the general managing director of the exporter, which was received in evidence over the objection of defendant's counsel as plaintiff's collective exhibit 1, states as follows:

* * *. In the ordinary course of trade our hats were not freely sold or offered for sale to retailers. We sold only to a limited number of retailers throughout Italy. All retailers acted as exclusive dealers of our hats. At the beginning of the season, we fixed the prices at which the retailers could resell our hats to the public. We sold only to retailers who agreed to resell at the prices fixed by us. We refused to sell to any retailers who sold at prices lower than the prices fixed by us. The retailers were a limited number of the most exclusive shops, that handled a finer class of hats than were sold to wholesalers. The retailers purchased only special qualities and shapes.

(325)

In addition to the foregoing I note the following in defendant's exhibit 2, the report of a Treasury representative made shortly after the exportation of the merchandise involved:

As described above, this manufacturer has two types of purchasers in the home market, each with a separate price list, the prices to "wholesale dealers" being substantially lower than those to "retail dealers." The manufacturer informed me that, should a "retail dealer" purchase the quantity usually purchased by a "wholesale dealer," such customer would not be granted the list prices pertaining to sales to "wholesale dealers."

Attached to the foregoing report, as exhibit G thereof, I find a letter purporting to be under the letterhead of the exporter in the case at bar, dated Alessandria, Italy, November 13, 1939, and apparently signed by the same V. Bonicelli who made the affidavit, plaintiff's exhibit 1. The letter is addressed to the Treasury representative, and the body thereof reads as follows:

Following your visit to our firm today, any questions which we discussed, we wish to confirm to you as follows:

(1) That sales are made to the United States to only one customer, Bill & Caldwell, Inc., of New York City, with whom we have a contract granting him "Exclusive Purchasers Rights."

(2) With respect to our sales in Italy, we have two categories of purchasers, each with a separate price list, as follows:

*Wholesale Dealers.*—These are a limited number of purchasers, each with exclusive purchaser rights for a particular locality, who resell the hats to shops and other dealers located in their respective localities.

*Retail Dealers.*—These are customers almost all of whom are shop owners, who purchase our hats for resale to individual consumers.

(3) Should a customer of this class purchase a quantity usually purchased by a wholesale dealer, we would only grant to him the prices allowed to retail dealers. In other words, that category of purchasers controls the prices which such purchaser obtains, rather than the quantity purchased.

(4) The sales of hats being such a specialized business, it is to our interest to prevent harmful competition, and for this reason, the number of our Italian customers in each of the above described categories is limited. That is to say: at intervals, changes are made and sales made to new customers and, in some instances, sales discontinued to old customers.

At a given moment, we try to fix the number of purchasers in relation to the possible demands of the market, where they are located.

Should you desire any further information from us, we are at your entire disposal.

With respect to sales made to the so-called "Wholesale Dealers," the Treasury representative's report, exhibit 2, contains the following:

The manufacturer has established selling districts in Italy and in each district has granted exclusive purchaser rights, with the exceptions noted below, to a dealer in each district. Such dealers purchase for the purpose of reselling the hats to other dealers, men's shops, haberdashers, etc. The number of these wholesale dealers was formerly thirteen and, as will be noted from list attached as exhibit A, effective October 2, 1939, the number was reduced to nine, a list of which is attached as exhibit B. Attached as exhibit C is a translation of a

copy of the letter which this manufacturer addressed to one of these dealers setting forth the terms under which merchandise was sold.

The exceptions referred to are the sales to retail dealers already noted.

In the affidavit, exhibit 1, it is stated by the affiant that—

—On or about September 15, 1939, our hats were freely offered for sale in the ordinary course of trade for home consumption in Italy, only to the wholesalers.

It is argued by plaintiff that the sales to the retailers were controlled or restricted, and cannot form the basis for foreign value, and it is further argued that the sales to the wholesalers were not restricted or controlled in any way and should be taken as the basis for foreign value.

In my view, a preponderance in weight of the evidence establishes that sales to wholesalers, as well as to retailers, were restricted in such manner (by granting exclusive purchase rights to one dealer in each district) as to prevent the prices thereof from being considered to be the prices at which such merchandise was "freely offered for sale for home consumption to all purchasers" within the meaning of that language as used in section 402 (c), *supra*. It is noteworthy that in listing all the sales for hats sold by the exporter for home consumption in Italy to wholesalers for the period from May 3, 1939, to December 15, 1939, only nine purchasers are named, each of whom is listed on exhibit B attached to exhibit 2 as a wholesaler with exclusive purchaser rights within his district thus corroborating, in a measure, the statements made in exhibit 2.

Even were this not the case, however, and if the merchandise were freely offered for sale only to wholesalers, as plaintiff contends, it is my view that nevertheless there still would not exist a foreign value for such merchandise within the meaning of section 402 (c), *supra*, for the reason that there still would be no price at which the merchandise was freely offered for sale to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade.

In paragraph 7 of exhibit 1 the affiant states:

I have personal knowledge of the fact that on and about September 15, 1939, no hats such as the hats shipped to Bill & Caldwell, Inc., under the invoice of September 9, 1939, were sold or freely offered for sale, for home consumption in Italy, by any other Italian manufacturers than ourselves, and that on and about September 15, 1939, only one other company sold similar hats, but not at prices higher than ours.

Apparently, then, so far as "such" hats are concerned, the ordinary course of the exporter's business reflected the ordinary course of trade in such hats. Accepting all the evidence in the light most favorable to the plaintiff's claim, it is plain that it was the ordinary course of trade in such hats in the principal markets of Italy at the time of exportation of the hats involved to sell to two classes of purchasers

only—retailers and wholesalers. Was there a price in the ordinary course of trade as thus determined at which such hats were freely offered to *all* purchasers? Definitely not. To only one class were the hats freely offered (let us say) without restriction—wholesalers. They were not freely offered to the other class—retailers—but were offered under restrictions as to resale price. It cannot then be said that in the ordinary course of trade such hats were freely offered to all purchasers, and so the requirement of the statute would not be met.

However, as I have hereinbefore indicated, I am of the opinion that a preponderance in weight of the evidence shows that the entire market, including sales or offers for sale to wholesalers as well as to retailers, was restricted, and I therefore deem it unnecessary to prolong this discussion concerning the situation which would obtain if only a part of the market, that is, sales or offers for sale to retailers, was restricted. The principle has been the subject of decision in the case of *Half Moon Manufacturing & Trading Co.* v. *United States,* Reap. Dec. 4314, affirmed in Reap. Dec. 4595 and on appeal to the Court of Customs and Patent Appeals in 28 C. C. P. A. 1, C. A. D. 115, as well as in *Heemsoth-Kerner Corp.* v. *United States,* Reap. Dec. 5381, affirmed in Reap. Dec. 5722, now pending on appeal to the Court of Customs and Patent Appeals in Suit 4422.

I am satisfied that at the time of exportation there was no price at which merchandise such as that at bar was freely offered for sale for home consumption to all purchasers in the principal markets of Italy, in the usual wholesale quantities and in the ordinary course of trade, and that consequently no foreign value therefor existed, and I so find.

Practically all of the evidence before me has reference to the sale of "such" hats as those at bar, the only reference to "similar" hats being in paragraph 7 of the affidavit, exhibit 1, quoted above to the effect that "on and about September 15, 1939, only one other company sold similar hats, but not at prices higher than ours."

There is no evidence before me as to the conditions under which similar hats were sold in Italy, and I am therefore unable to determine whether or not a foreign value existed at the time of exportation of the hats here in question. Section 501 of the Tariff Act of 1930 provides:

The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

Plaintiff has failed to establish any value or any basis of value differing from those found by the appraiser. I therefore find that cost of production as defined in section 402 (f) of the Tariff Act of

1930 is the proper basis of value for the merchandise at bar, and that such value as to each item involved is the appraised value.

Judgment will issue accordingly.